**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-1470-WJM

DONALD HARRY ALLEN,

    Appellant,

v.

ROBERTSON B. COHEN, as Chapter 7 Trustee,
DELANGHE/BUYSSE LLC, and
KAREN ABSHER, Receiver,

    Appellees.

---

**ORDER AFFIRMING BANKRUPTCY COURT'S ORDER
APPROVING SALE OF ASSETS**

---

Appellant Donald Harry Allen ("Debtor") appeals from the May 23, 2013 Order of the U.S. Bankruptcy Court for the District of Colorado ("Bankruptcy Court") approving the sale of his shareholder interest in two oil companies under 11 U.S.C. § 363(b). (ECF No. 19 at 6; *see also* ECF No. 20-1.)  For the reasons set forth below, the Bankruptcy Court's Order is AFFIRMED.

## I.  BACKGROUND

The Debtor is the Owner and CEO of American Energy Resources Corporation ("AERC") and H&M Petroleum Corporation ("H&M"), which jointly operate an oil production enterprise.  (R.[1] (ECF No. 10) at 7, 60-61.)  On January 18, 2012, AERC

---

[1] References to the Bankruptcy Record are cited as (R. __.).  References to filings made in the District Court are cited as (ECF No. __.).  References to filings made before the Bankruptcy Court in Case No. 12-24413-ABC, but which are not contained in the Record filed in the District Court at ECF No. 10, are cited as (Bk. ECF No. __.)

and H&M were placed in receivership by a state court, and a receiver, Karen Absher ("Receiver"), was appointed. (R. at 48.) On April 2, 2012, both AERC and H&M filed Chapter 11 bankruptcy cases in the Bankruptcy Court without the assistance of counsel. (*Id.*) Both cases were dismissed on June 7, 2012 for failure to obtain counsel. (Bk. Case No. 12-16438-ABC (AERC), ECF No. 105; Bk. Case No. 12-16439-ABC (H&M), ECF No. 100.)

The Debtor filed his individual petition for Chapter 7 bankruptcy on July 10, 2012. (Bk. ECF No. 2.) Defendant Robertson B. Cohen (the "Trustee") was appointed as Chapter 7 Trustee. (*Id.*)

On January 24, 2013, the Trustee filed a Motion to Approve Shareholder Interest Purchase Agreement Free and Clear of Liens Pursuant to 11 U.S.C. § 363(b) and (f). (Bk. ECF No. 118.) The Trustee moved for approval of the sale of the Debtor's shareholder interests in both AERC and H&M to Defendant Delanghe/Buysse, LLC (the "Purchaser") for a purchase price of $664,566.38, consisting of $50,000.00 in cash and a credit in the amount of $614,566.38 resulting from two loans previously made by the Purchaser to the Debtor in the amounts of $400,000.00 and $157,403.04. (*Id.* at 2.) The subject shareholder interest consisted of either 80% or 100% of the ownership of AERC and H&M. (*Id.* at 1.) The Bankruptcy Court denied the initial motion without prejudice, requesting that the Trustee further demonstrate due diligence in seeking to sell the shares, and further identification of the terms of the transaction. (Transcript of May 20, 2013 hearing ("Tr. 5-20-13") (ECF No. 29-2) at 4-5.)

The Trustee filed an Amended Motion to approve the sale on March 18, 2013. (Bk. ECF No. 170.) The Amended Motion included additional information regarding

AERC's and H&M's liabilities, assets, and income, and described the Trustee's efforts to find a buyer for the shares. (*Id.*) The Debtor objected to the Amended Motion, asserting that the sale price was inadequate based on the leased mineral rights, reserves, and undeveloped acreage owned by AERC and H&M. (ECF No. 29 at 5-6.)

A hearing on the proposed sale and the Amended Motion was held on May 20 and 21, 2013. (Tr. 5-20-13; Transcript of May 21, 2013 hearing ("Tr. 5-21-13") (ECF No. 29-1).) The Trustee presented evidence and testimony from the Receiver; Clark Absher, the Receiver's husband and an accountant and financial manager; Paul Cadorette, an expert in forensic accounting and business valuation; and Kendor Jones, an oil and gas attorney. (Tr. 5-20-13.) The Debtor presented evidence and testified himself. (Tr. 5-21-13.) At the close of the hearing, the Bankruptcy Court issued an oral ruling approving the sale, stating that "[t]he Court finds that on the evidence before it, that the Trustee's proposed sale is within the Trustee's discretion and business judgment, that the Trustee has exercised his business judgment and while the proposed sale will net very little for this estate, it will on the evidence before the Court net less rather than more with further time." (*Id.* at 162.) The Bankruptcy Court further stated:

> Finally, on the basis of the record before me, I am not going to make a [§] 363(m) finding of good faith or the absence of good faith and my not making a finding should not be, by implication mean that the Court finds that there isn't good faith. Neither the Trustee nor the purchasers appeared and testified to the negotiations between them and this is somebody who has dealt with this estate as an estate and dealt with this stock before there was a bankruptcy so under those circumstances, I do not have a record on which to make a [§] 363(m) good faith finding but as I say, the record should also be clear that there's no basis to make a finding one way or the other and there's no implication that—there's no implication that the—there is either good or bad faith in connection or no

> implication that the absence of the finding means that the Court has found that there isn't good faith.

(*Id.* at 163-64.) On May 23, 2013, the Bankruptcy Court issued a written order approving the sale based on the findings stated on the record. (ECF No. 20-1.)

On June 6, 2013, the Debtor filed his Notice of Appeal and Election to have the case heard by the District Court. (ECF Nos. 2 & 3.) The Debtor's Opening Brief was filed on September 18, 2013. (ECF No. 19.) The Trustee's Opposition Brief was filed on November 1, 2013. (ECF No. 29.) The Receiver joined in the Trustee's Response Brief. (ECF No. 30.) The Debtor's Reply Brief was filed on November 18, 2013. (ECF No. 31.) This matter is now fully briefed and ripe for disposition.

## II. LEGAL STANDARD

In reviewing a bankruptcy court's decision, the district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8013. As the appellate court, the district court has discretion to affirm "on any ground adequately supported by the record, so long as the parties have had a fair opportunity to address that ground." *Maldonado v. City of Altus*, 433 F.3d 1294, 1302-03 (10th Cir. 2006).

A bankruptcy court's legal conclusions are reviewed *de novo*, while its factual findings are reviewed for clear error. *In re Warren*, 512 F.3d 1241, 1248 (10th Cir. 2008). On mixed questions of law and fact, the Court reviews *de novo* any question that primarily involves the consideration of legal principles, and applies the clearly erroneous standard if the mixed question is primarily a factual inquiry. *In re Wes Dor, Inc.*, 996 F.2d 237, 241 (10th Cir. 1993).

### III.  ANALYSIS

On appeal, the Debtor raises two issues for review: (1) whether the Trustee met his burden of introducing evidence supporting a finding of good faith, which is required for the approval of a sale; and (2) whether the Bankruptcy Court erred in finding a lack of evidence of either good faith or an absence thereof.  (ECF No. 19 at 8.)  The Court will discuss each issue in turn.

**A.     Good Faith Requirement to Approve a Sale**

When the Bankruptcy Court approved the sale of the Debtor's shareholder interest to the Purchaser under 11 U.S.C. § 363, it explicitly stated that it lacked evidence to "make a [§] 363(m) finding of good faith or the absence of good faith".  (Tr. 5-21-13 at 163-64.)  The Debtor argues that the Trustee was obligated to present evidence supporting a finding of good faith in order to demonstrate that the Purchaser is a good faith purchaser for value.  (ECF No. 19 at 13.)  Because the Trustee failed to present such evidence, the Debtor contends that the Amended Motion must be denied, or in the alternative, the case should be remanded to the Bankruptcy Court for a finding on the question of whether the Purchaser is a good faith purchaser for value.  (*Id.*)

Contrary to the Debtor's contentions, the Court finds no clear authority from the Tenth Circuit requiring a good faith finding for approval of a sale in a Chapter 7 bankruptcy.  As stated by the Bankruptcy Appellate Panel of the Tenth Circuit ("B.A.P."), "the circuits are split as to whether a good faith purchaser finding is required to approve a sale under § 363(b). . . . [T]he Tenth Circuit has not ruled on this issue."  *In re Buerge*, 2014 WL 1309694, at *12 (B.A.P. 10th Cir. Apr. 2, 2014).  While the Third

Circuit has held that a good faith finding must be made before approval of a sale, the Ninth Circuit has maintained that no such finding is required.  *See id.*  The Court will discuss each position and its application to the instant case below.

    1.    <u>Good Faith Finding Required: *In Re Abbotts Dairies*</u>

The Debtor urges the Court to follow *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986), which held that a bankruptcy court is required to make a finding with respect to the good faith of the purchaser when it authorizes a sale of assets under § 363(b)(1).  788 F.2d at 149-50.

As an initial matter, the Court finds that *Abbotts Dairies* is distinguishable in multiple respects from the instant case.  The Third Circuit in *Abbotts Dairies* was reviewing a district court's decision to dismiss a bankruptcy appeal as moot pursuant to 11 U.S.C. § 363(m) based on the appellant's failure to show a lack of good faith.  *See Abbotts Dairies,* 788 F.2d at 147.  Section 363(m) states that an appeal of a sale authorization "does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, . . . unless such authorization and such sale or lease were stayed pending appeal."  That is, § 363(m) moots the appeal of an authorized sale to a good faith purchaser, unless the sale is stayed.  Because the district court in *Abbotts Dairies* had erred in finding the appeal moot under § 363(m) in the absence of any explicit finding as to good faith by the bankruptcy court, the Third Circuit remanded the case to the bankruptcy court for the purpose of making a finding as to good faith.

Here, neither party argues that the appeal is moot. The Bankruptcy Court's explicit reference to § 363(m) in stating that no evidence existed on which to make a good faith finding clarifies that the Bankruptcy Court's discussion of good faith was intended solely to indicate that the sale was not protected from appeal in the absence of a stay. (Tr. 5-21-13 at 164-65.) Thus, *Abbotts Dairies* does not require a good faith finding where, as here, no § 363(m) issue has been raised.[2]

The Tenth Circuit B.A.P. drew a similar distinction in *Buerge*, where it found error in the bankruptcy court's statement that a finding of good faith was required before authorizing a sale under § 363(b). 2014 WL 1309694 at *12 n.97. The B.A.P. explained that this error resulted from a misapplication of *In re Independent Gas and Oil Producers, Inc.*, 80 F. App'x 95 (10th Cir. 2003), which was "inapposite as it involved principles of bankruptcy mootness and not the approval of a § 363 sale." *Id.* The same is true here, where mootness is not at issue.

Furthermore, the Court finds the reasoning of *Abbotts Dairies* inapplicable to the instant matter. The Third Circuit noted that, in addition to § 363(m) considerations, its holding requiring a good faith finding for approval of a sale was supported by "the creditor protections of Chapter 11 . . . [requiring] that the bankruptcy court independently scrutinize the debtor's reorganization plan and make a finding that 'it has been proposed in good faith and not by any means forbidden by law.'" 788 F.2d at 150

---

[2] The Debtor also directs the Court to *In re Lotspeich*, 328 B.R. 209, 218 (B.A.P. 10th Cir. 2005), which cites *Abbotts Dairies* in holding that in the absence of factual findings on whether a sale was conducted in good faith, the case should be remanded to the bankruptcy court for the purpose of making such findings. However, *Lotspeich* also discusses the good faith issue in the context of a mootness determination under § 363(m), which is not at issue here.

(quoting 11 U.S.C. § 1129(a)(3)).  In the context of a Chapter 11 bankruptcy, good faith is a required element of the reorganization plan, and a sale as part of that plan may, by extension, be required to be conducted in good faith.  *See* 11 U.S.C. § 1129(a)(3).  In contrast, the purpose of a Chapter 7 bankruptcy like the instant matter is liquidation, not reorganization.  At least in the Tenth Circuit, there is no analogous good faith purchaser requirement for each sale in the liquidation process.  *Cf. In re A.D. Mac Consulting Corp.*, 2008 WL 4186896, at *2 (Bankr. D.N.J. Sept. 5, 2008) (distinguishing *Abbotts Dairies* and remarking that "[i]n a Chapter 11 case, the sale of substantial assets outside the context of a Chapter 11 plan is the exception. . . .  Most of those potential abuses do not pertain in a Chapter 7 case because the very purpose of Chapter 7 is liquidation of all the assets by a Trustee.").  Because *Abbotts Dairies* relied heavily on § 363(m) mootness and Chapter 11 considerations, neither of which is relevant to the instant case, the Court finds its holding inapplicable to this matter.

The Debtor states broadly and without citation that "[a]ll courts appear to agree that a [§] 363 sale must be to a good faith purchaser for value." (ECF No. 31 at 5.)  After reviewing the relevant authorities, the Court finds the Debtor's statement, and his implication that a failure to make a good faith finding defeats a proposed sale, is unsupported.  Lacking any authority in the Tenth Circuit supporting a requirement to present evidence of good faith for approval of a sale in a Chapter 7 bankruptcy, the Court holds that no such finding was required for the approval of the sale here.  Therefore, the Trustee's failure to produce evidence for the Bankruptcy Court to make a good faith finding does not require reversal, and the Debtor's appeal is denied in that respect.

2. <u>No Good Faith Finding: Business Judgment Test</u>

Instead, courts in the Tenth Circuit apply the "business judgment" test in reviewing a proposed sale, which requires an evaluation of whether the trustee has established "sound business reasons" for the terms of the sale, considering whether there is evidence of "[a]ny improper or bad motive," whether "[t]he price is fair and the negotiations or bidding occurred at arm's length," and whether the trustee followed "[a]dequate procedures, including proper exposure to the market and accurate and reasonable notice to all parties in interest." *In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004) (citing *In re Lionel,* 722 F.2d 1063 (2d Cir. 1983), as "the most cited authority [for] the proper standard for the Court's use in considering a proposed motion to sell").

While evidence of bad faith would be considered under the "improper or bad motive" prong and would weigh against approving the sale, evidence of the purchaser's good faith is not explicitly required prior to approval of the sale. *See in re Castre*, 312 B.R. at 428 (discussing the "improper or bad motive" prong as requiring an evaluation of the propriety of the trustee's sale motion). The bankruptcy court evaluates the trustee's sound business judgment, not the purchaser's, in reviewing a proposed sale under the business judgment test. *See id.* (noting that the proponent of the sale, namely the trustee or debtor-in-possession in a Chapter 11 case, "has the burden to establish sound business reasons for the terms of the proposed sale," and "most factors address 'process' issues concerning the sale, rather than the [substantive] 'business' rationale for why the successful bid was chosen.").

As the Debtor relies principally on his argument that a good faith finding is

required, neither party has challenged the Bankruptcy Court's application of the business judgment test.  The Court finds that the Bankruptcy Court properly applied the business judgment test here in not requiring an explicit finding on the issue of good faith.

**B.     Bankruptcy Court's Finding of an Absence of Evidence of Bad Faith**

The Debtor's argument relies principally on his position that the Bankruptcy Court's failure to make a finding as to good faith requires reversal.  However, in his Reply, he briefly argues that even if the Court holds that no good faith finding is required, the question of "whether there is adequate proof in this case that D&B is a good faith purchaser is fairly raised on this appeal." (ECF No. 31 at 6-7.)  Neither party challenges the Bankruptcy Court's finding of insufficient evidence of *good* faith. (*See* ECF No. 19 at 19 (stating that "[n]o 'clear error' can thus be found with the Bankruptcy Court's finding of no evidence of good faith.").)  Thus, the Court construes the Debtor's argument as challenging only the finding that there was no evidence of *bad* faith.

The Debtor argues in his Opening Brief that the "absence of a finding of good faith is a finding of the absence of good faith". (*Id.* at 18.)  This argument ignores the Bankruptcy Court's explicit statement that there was no evidence in the record on which to make a finding of either good faith or bad faith, and that there should be "no implication that the absence of the finding means that the Court has found that there isn't good faith." (Tr. 5-21-13 at 163-64.)  Thus, no finding as to either good or bad faith was made by the Bankruptcy Court.  Accordingly, the Court declines to conclude that the Bankruptcy Court's finding of an absence of evidence of good faith necessitates the

existence of evidence of bad faith.

Rather, the question of whether sufficient evidence existed to make a finding of bad faith is a factual issue which is subject to the clearly erroneous standard of review. *In re Warren*, 512 F.3d at 1248. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

The Debtor discusses two factual considerations that he suggests could support a finding of bad faith: (1) the lack of value attributed to millions of barrels of reserves, and (2) the use of a credit bid by the Purchaser on an allegedly usurious loan. (ECF Nos. 19 at 19; 31 at 4-5.) As to the first of these arguments, the Debtor contends that the proposed sale severely undervalues the shareholder interest at issue because no value was given to AERC and H&M's oil reserves. The Debtor points out that evidence of those reserves, consisting of over 1,000,000 barrels, was presented before the Bankruptcy Court in the AERC "2011 Equity Sponsor Investment Package – Overview Brochure". (ECF No. 19 at 19 (citing ECF No. 29-5).)

In response, the Trustee notes that the 2011 Equity Sponsor Investment Package contained data from a 2009 Reserve Study, and that most of the mineral leases held by AERC had expired by the time of the proposed sale. (ECF No. 29 at 7.) Evidence in the record shows that the 43,687 leased acres held at the time of the 2011 Equity Sponsor Investment Package Overview Brochure had decreased by April 30, 2013 to 6,761 leased acres. (Tr. 5-20-13 at 29; ECF No. 29-3 (showing 4,960 producing leased acres and 1,801 non-producing leased acres).) Mr. Cadorette

testified that he calculated the value of the shareholder interest attributable to the leases as a negative number, or at most, zero, due to the companies' negative cash flow, long-term debt, and deficiency in working capital.  (ECF No. 29 at 8-9.)

The Debtor contests Mr. Cadorette's testimony, arguing that he and the other witnesses presented by the Trustee either had negligible experience valuing oil leases and reserves, or disingenuously agreed that reserves could be worthless.  (ECF No. 19 at 20.)  The Court acknowledges the disparity presented by the inconsistencies in the evidence.  However, as explained in the Bankruptcy Court's oral ruling, there is an important difference between an asset sale and a stock sale.  (Tr. 5-21-13 at 158.)  While the assets of AERC and H&M might have significant value, the Trustee has no power to sell those assets in this Debtor's bankruptcy proceeding, and can only sell the Debtor's shareholder interest.  (*Id.* at 158-59.)  Because of the reduced production and deterioration in the leased acreage, and the lack of money in the estate to fund development or new drilling, the Bankruptcy Court found that the admittedly depressed price of the shareholder interest was appropriate.  (*Id.* at 60-61.)  The Court agrees with the Bankruptcy Court's analysis of the evidence regarding the effect of the value of the assets of AERC and H&M on the price of the stock that is the subject of the sale here, and finds no clear error in its decision not to construe the testimony showing a zero value of the reserves as evidence of bad faith.

As to the Debtor's second argument, with respect to the questionable use of a credit bid and allegedly usurious loan, the Debtor states that the initial loan of $400,000 made by the Purchaser to the Debtor requires payment of 10% interest (or $40,000) and the conveyance of 20% of the Debtor's shareholder interest in AERC and H&M.

(ECF No. 19 at 20.) Because Colorado law prohibits loans with interest rates greater than 45% (or $140,000 for a loan of $400,000), the Debtor argues that the loan here is prohibited. The Debtor has calculated 20% of the value of the shareholder interests as demonstrated by the price offered by the Purchaser in this proposed sale, plus the $40,000 representing 10% interest, which results in an interest payment of $206,141.59, and exceeds the permissible $140,000 in interest. (ECF No. 31-1 at 11-12.)

On review of the promissory notes in the record, the Court finds that not one, but two loans were made by the Purchaser to the Debtor: one in the amount of $400,000, made on April 27, 2012, and the other in the amount of $157,503.04, made on May 4, 2012. (ECF No. 29-6 at 10, 19.) The proposed sale includes a credit bid as to both of these loans. Thus, even assuming that the Debtor's method of calculation is correct, the resulting interest paid would be $221,891.89, which is less than $250,876.37, representing 45% of the total loan amount. The Debtor does not contest the validity of the promissory notes in evidence. Accordingly, the Court finds no support for the Debtor's argument that the loans are usurious.

The Debtor has presented no other evidence supporting his argument that the credit bid cannot be used because of a dispute as to the validity of the underlying loan.[3] Thus, on this record, the Court cannot find clear error in the Bankruptcy Court's

---

[3] The Debtor raises several new arguments in his Reply, alleging various ways in which the Receiver, the Purchaser, and the Trustee are "aligned against Debtor and his interests". (ECF No. 31 at 8-15.) These allegations are not relevant to the questions presented for appeal in the Debtor's Opening Brief. Furthermore, the Court does not review arguments raised for the first time in a reply brief. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009). Accordingly, the Court declines to consider these arguments.

conclusion that there was no evidence to support a finding of bad faith.

Given the inconsistencies in the evidence in the record, the Bankruptcy Court's finding that no evidence supported a finding of bad faith is not clearly erroneous. Accordingly, the Court affirms the Bankruptcy Court's order finding that the Trustee properly applied his business judgment and approving the sale.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS that the Bankruptcy Court's approval of the sale of the Debtor's shares of stock is hereby AFFIRMED.

Dated this 21st day of May, 2014.

BY THE COURT:

William J. Martinez
United States District Judge